Nos. 2015-1804

# United States Court of Appeals
# for the Federal Circuit

VOCALTAG LTD. and SCR ENGINEERS LTD.,

*Plaintiffs-Appellants,*

v.

AGIS AUTOMATISERING B.V.,

*Defendant-Appellee.*

**Appeal from the United States District Court for the Western District of Wisconsin, Case No. 3:13-cv-00612-JDP**

## NON-CONFIDENTIAL REPLY BRIEF FOR APPELLANTS VOCALTAG LTD. AND SCR ENGINEERS LTD.

ISRAEL SASHA MAYERGOYZ
JONES DAY
77 West Wacker Drive
Chicago, IL  60601-1692
(312) 782-3939

FRED H. PERKINS
ALVIN C. LIN
MORRISON COHEN LLP
909 3rd Avenue
New York,  NY 10022
(212) 735-8600

GREGORY A. CASTANIAS
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
(202) 879-3939

BARRY G. MAGIDOFF
PAUL J. SUTTON
SUTTON MAGIDOFF LLP
909 3rd Avenue, 27th Floor
New York, NY 10022
(212) 584-1990

*Attorneys for Plaintiffs-Appellants VocalTag Ltd. and SCR Engineers Ltd.*

## **CERTIFICATE OF INTEREST**

Pursuant to Federal Circuit Rule 47.4, undersigned counsel for Appellants SCR Engineers Ltd. and VocalTag Ltd. certifies the following:

1.       The full name of every party or amicus represented by us is:

      SCR Engineers Ltd.
      VocalTag Ltd.

2.       The names of the real party in interest represented by us are:

      Not Applicable

3.       All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      Appellant VocalTag Ltd. is 100% owned by SCR Engineers Ltd.
      SCR Engineers Ltd. is 100% owned by Allflex Dairy Israel, Ltd.

4.       The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

      JONES DAY:  Gregory A. Castanias, Israel Sasha Mayergoyz

      MORRISON COHEN:  Fred H. Perkins, Alvin C. Lin

      SUTTON MAGIDOFF LLP:  Paul J. Sutton, Barry G. Magidoff

      REINHART, BOERNER VAN DEUREN:  Jessica H. Polakowski

Dated:  April 11, 2016        /s/ Israel Sasha Mayergoyz
                           JONES DAY
                           77 W. Wacker Drive, Suite 3500
                           Chicago, IL 60601-1692
                           (312) 269-1572

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF AUTHORITIES ............................................................. iii

TABLE OF ABBREVIATIONS .........................................................vi

INTRODUCTION ............................................................................... 1

ARGUMENT ...................................................................................... 2

I.    THE DISTRICT COURT'S SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF THE '481 PATENT HINGES ON
ERRONEOUS CLAIM CONSTRUCTIONS AND IMPROPER
RESOLUTION OF MATERIAL DISPUTED FACTS ................................ 2

    A.    The District Court Erred By Limiting The Asserted Claims To
Cover Only Sound Sensors For Sensing Chewing Actions ................. 2

    B.    The District Court Improperly Omitted The Algorithm In
Figure 6 As Corresponding Structure For The "Data Processor"
Term ....................................................................................... 11

    C.    The District Court Misapplied The Claim Language,
Improperly Resolved Factual Disputes, And Incorrectly Drew
Inferences In Favor Of Agis ................................................... 14

II.    THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT
OF NON-INFRINGEMENT REGARDING THE '149 PATENT
STEMS FROM AN ERRONEOUS CLAIM CONSTRUCTION .............. 19

    A.    Agis's Arguments Cannot Rehabilitate The District Court's
Erroneous Construction ......................................................... 20

    B.    Under A Proper Construction, Genuine Issues Of Material Fact
Exist Regarding Infringement Of The '149 Patent ................... 26

CONCLUSION ................................................................................ 30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 17, 27, and 28 contains technical information that Defendant Agis Automatisering B.V. designated as confidential pursuant to the protective order entered in the district-court proceedings.

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Dey L.P.*,
  287 F.3d 1097 (Fed. Cir. 2002) .......................................................................10

*Aristocrat Techs. Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008) ..........................................................................8

*Aventis Pharma S.A. v. Hospira, Inc.*,
  675 F.3d 1324 (Fed. Cir. 2012) .......................................................................16

*Blackboard, Inc. v. Desire2Learn Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009) ...................................................................8, 21

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) .......................................................................21

*Conoco, Inc. v. Energy & Envtl. Int'l*,
  460 F.3d 1349 (Fed. Cir. 2006) .......................................................................14

*Cordis Corp. v. Medtronic Ave, Inc.*,
  511 F.3d 1157 (Fed. Cir. 2008) .......................................................................26

*Creo Prods. v. Pressteck, Inc.*,
  305 F.3d 1337 (Fed. Cir. 2002) .......................................................................12

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed. Cir. 2005) .......................................................................10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  769 F.3d 1371 (Fed. Cir. 2014), *cert. granted*, 136 S. Ct. 356
  (2015) ...............................................................................................................29

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014) ..................................................................10, 11

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ...................................................24, 26

*Intel Corp. v. VIA Techs., Inc.*,
  319 F.3d 1357 (Fed. Cir. 2003) ...........................................................7

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) .........................................................21

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1982).........................................................................16

*Johnson Worldwide Assoc., Inc. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999) ...........................................................25

*Linear Tech. Corp. v. Impala Linear Corp.*,
  379 F.3d 1311 (Fed. Cir. 2004) ...........................................................6

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
  344 F.3d 1205 (Fed. Cir. 2003) ......................................................3, 5

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
  194 F.3d 1250 (Fed. Cir. 1999) .........................................................12

*Noah Sys., Inc. v. Intuit Inc.*,
  675 F.3d 1302 (Fed. Cir. 2012) ......................................................3, 8

*Pause Tech., LLC v. TiVo, Inc.*,
  419 F.3d 1326 (Fed. Cir. 2005) ....................................................22, 23

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*,
  457 F.3d 1284 ..................................................................................10

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................................10, 25

*Playtex Prods., Inc. v. Procter & Gamble Co.*,
  400 F.3d 901 (Fed. Cir. 2005) ...........................................................12

*Prima-Tek II, L.L.C. v. Polypap, S.A.R.L.*,
    318 F.3d 1143 (Fed. Cir. 2003) .........................................................................24

*Prolitec, Inc. v. Scentair Techs., Inc.*,
    807 F.3d 1353 (Fed. Cir. 2015) .........................................................................24

*Saffran v. Johnson & Johnson*,
    712 F.3d 549 (Fed. Cir. 2013) .............................................................................7

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed. Cir. 1985) .........................................................................15

*Stryker Corp. v. Zimmer, Inc.*,
    782 F.3d 649 (Fed. Cir. 2014), *cert. granted*, 136 S. Ct. 356 (2015)................29

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015) .........................................................................21

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
    392 F.3d 1325 (Fed. Cir. 2004) ...........................................................................9

## <u>**TABLE OF ABBREVIATIONS**</u>

### *Parties*

| | |
|---|---|
| Agis | Defendant-Appellee Agis Automatisering B.V. |
| SCR | Plaintiff-Appellant SCR Engineers Ltd. |
| VocalTag | Plaintiff-Appellant VocalTag Ltd. |

### *Cites*

| | |
|---|---|
| A__ | Joint Appendix at page(s) __ |
| A__:__ | Joint Appendix at page __: line __ |
| A__:__:__ | Joint Appendix at page __: minu-script page ___:line ___, or page __:column __:line __ |

### *Terms*

| | |
|---|---|
| '149 Patent | U.S. Patent No. 7,878,149, issued to Voronin *et al.* and entitled "Method and Device for Detecting Estrus" |
| '481 Patent | U.S. Patent No. 7,350,481, issued to Bar-Shalom and entitled "Method and System for Monitoring Physiological Conditions Of, and/or Suitability of Animal Feed for Ruminant Animals" |
| CowManager System | Defendant Agis's accused product |
| Heatime System | Plaintiff SCR's commercial product |

*All emphasis is added throughout unless otherwise indicated.*

# INTRODUCTION

Without ever conducting a *Markman* hearing or oral argument on the parties' motions, and despite the parties being less than two weeks from trial, the district court entered a four-sentence "text only order" granting summary judgment of non-infringement of both the '481 and '149 Patents. When the court ultimately issued a reasoned opinion, it became clear that the court's order rested on a fundamental misapplication of claim-construction rules and the summary-judgment standard.

SCR's opening brief detailed how the district court's later reasoning did not support its earlier, "text only" judgment. The court adopted overly-narrow constructions directly at odds with the patents' teachings, and improperly imported unrecited limitations into the claim language—both errors of law. Further, the district court improperly made factual findings at the summary-judgment stage in favor of the movant Agis—at one point siding with Agis simply because it "makes a good case" of non-infringement—and resolving contradictory testimony in a light most favorable to the movant Agis. These, too, were errors of law. In its response brief, Agis largely ignores SCR's showings, and instead tries to rehabilitate the district court's errors with assertions that directly conflict with this Court's precedent, and that contradict the positions Agis and its experts took during litigation.

As explained below and in SCR's opening brief, under the proper claim constructions, this case should be remanded for resolution by a jury because there exist genuine material issues of disputed fact regarding infringement of the '481 and '149 Patents.

## ARGUMENT

## I. THE DISTRICT COURT'S SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '481 PATENT HINGES ON ERRONEOUS CLAIM CONSTRUCTIONS AND IMPROPER RESOLUTION OF MATERIAL DISPUTED FACTS

### A. The District Court Erred By Limiting The Asserted Claims To Cover Only Sound Sensors For Sensing Chewing Actions

SCR's opening brief established that the district court erroneously construed the "sensor for sensing chewing actions" term by restricting the corresponding structure to only sound sensors, which the written description states are merely preferred.  (SCRBr. 21-32.)  The '481 Patent expressly contemplates using other types of sensors, such as motion sensors, for sensing chewing actions, and teaches:

> The sensors for sensing chewing actions are *preferably* sound sensors, and those for sensing regurgitations are preferably microswitches. However, *other types of sensors could be used*.  For example, *chewing actions could be sensed by sensors for sensing the motions of the animal's lower jaw*, or the tightening of the animal's muscles in the throat when swallowing.

(A107:2:44-50.)  The '481 Patent further explains that while sound sensors are "particularly advantageous" for sensing chewing actions, "*it is also contemplated*

*that the chewing actions may be sensed* in another manner, e.g., *by sensing … the movement of the animal's jaw during chewing.*"  (A110:8:35-41.)

These teachings, taken in light of this Court's precedent that is "generous in finding something to be a corresponding structure when the specification contained a generic reference to structure that would be known to those in the art," *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1213-14 (Fed. Cir. 2003), establish that structure corresponding to the "sensor for sensing chewing actions" includes motion sensors.  As detailed in SCR's opening brief, this construction is confirmed by other parts of the specification (SCRBr. 23-24), the dependent claims (*id.* at 31-32), and Agis's experts' opinions (*id.* at 28).

Agis does not dispute that its accused product uses motion sensors.  Instead, Agis fires a barrage of arguments that seek to defend the district court's overly-narrow construction.  Agis's arguments falter in view of the record evidence and controlling precedent.  (AgisBr. 36-51.)

First, Agis asserts that SCR's "current theory was never presented to the district court." (*Id.* at 38-40.)  That is plainly wrong.  There is no waiver where, as here, the portions "of the specification that [plaintiff] now argues provide the corresponding structure for the [disputed] limitation were relied upon for the same purpose by [plaintiff] before the district court." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012).  Here, when opposing summary judgment, SCR

repeatedly cited the same passages of the '481 Patent discussed above to demonstrate that the asserted claims cannot be limited to sound sensors, and properly include motion sensors.  For example, in its brief opposing summary judgment, SCR explained that the claim language and specification "do[] not limit the claim to use of a sound sensor" (A2764-65), and argued that "it is still clear from a review of the patent's specifications that the structure for the sensor can include not only sound sensors, but other types of sensors as well for sensing the motions of the animal's lower jaw…." (A2770-71.)  SCR's proposed findings of fact cited the same column 2, lines 46-50 of the '481 Patent (quoted above) as establishing that the claims include sound sensors *and* other types of sensors, such as "sensors for sensing the motions of the animal's lower jaw."  (A2730 ¶ 86.)  Furthermore, SCR's objections to Agis's proposed findings made clear that "'chewing actions could be sensed by sensors for sensing the motions of the animal's lower jaw ….'  This clearly includes, for example, three dimensional accelerators as are used by the defendant."  (A3207-08 ¶ 41.)  There is no waiver here.

Second, Agis contends that the phrase "sensors for sensing the motions of the animal's lower jaw" allegedly "does not recite structure at all" and "is nothing more than a synonym for the claimed function."  (AgisBr. 40-43.)  To make this argument, Agis isolates and skews this phrase to urge a reading opposite to what

follows from viewing the language in its context as a whole.  Situating this phrase in its complete context, the specification directly refutes Agis's arguments.  The two sentences immediately preceding this phrase state that "sensors for sensing chewing actions are *preferably* sound sensors…. However, *other types* of sensors could be used."  (A107:2:44-47.)  The specification then provides particular "example[s]" of the "other types" of sensors that "could be used":  "*For example*, chewing actions could be sensed by sensors for sensing the motions of the animal's lower jaw."  (A107:2:47-49.)  Reading the phrase in its proper and accurate context, the inventor stated that sound sensors are *preferred*, next explained that "other types of sensors" can be used for sensing chewing actions, and then precisely identified "sensors for sensing motions"—that is, motion sensors—as an "example" of those "other types of sensors."  (A107:2:44-50.)  Accordingly, the only sensible reading of the phrase "sensors for sensing the motions of the animal's lower jaw" is that it discloses motion sensors as a specific class of alternatives to sound sensors.

Third, Agis asserts that the specification was required to provide more detail in order to constitute a disclosure of motion sensors.  (AgisBr. 41-43.)  That is wrong.  As this Court instructs, a "generic structural reference" is sufficient when it "would be known to those in the art and th[e] structure was clearly associated with performance of the claimed function."  *Elekta*, 344 F.3d at 1213-14

(explaining that § 112, ¶ 6 requires only "some link between a generic structural reference and a claimed function"); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1322 (Fed. Cir. 2004) (holding that a general reference to "PWM circuits" does not make such circuits "excludable from the corresponding structure for failing to reference a specific structure. Although the expression 'PWM circuit' does not reference a specific circuit structure, persons of skill in the art would understand that 'PWM circuit' references a discrete class of circuit structures that perform known functions"). Here, the '481 Patent clearly links motion sensors with the function of sensing chewing actions, and Agis's own experts recognized that motion sensors were well known for monitoring livestock behavior. (A425-26; A1627; A1874).

Moreover, the '481 Patent specifically identifies "microswitches" as particular types of motion sensors. (SCRBr. 23-24.) Attempting to minimize this disclosure, Agis asserts that microswitches are "irrelevant" because they are "identified as sensors for sensing a bolus." (AgisBr. 48.) This argument misses the point. There is no dispute that microswitches are motion sensors, nor that the patent specification identifies them as such. Accordingly, given the patent's teaching that "chewing actions could be sensed by sensors for sensing [] motions" (A107:2:47-48), skilled artisans would understand—from the face of the patent alone—that microswitches can also be used for sensing chewing actions.

Fourth, Agis asserts that construing the claims to include motion sensors "involve[s] purely functional disclosures that would [ ] swallow[] every structure for performing the claimed function." (AgisBr. 44.) This Court rejected Agis's argument in *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003). There, this Court held that a disclosure of "generic core logic" without any "specific circuitry" constituted adequate structure for a means-plus-function term and did not "conflict[] with the terms set forth … in § 112, ¶ 6." *Id.* at 1366-67. Supporting this conclusion, this Court reasoned that "by analogy, if a chair is disclosed in the specification that corresponds to the 'means for seating' limitation in a claim, asserting that there are infinite numbers of structures that could make a chair or there are unlimited types of chairs in the world would not necessarily" violate section § 112, ¶ 6. *Id.* at 1367. Agis attempts to scramble this Court's reasoning by arguing that the '481 Patent's disclosure is akin to identifying a "seat" as corresponding structure. (AgisBr. 45.) This argument fails because, as explained above, the '481 Patent expressly discloses distinct and alternative structures for sensing chewing actions—sound sensors and motion sensors. Section 112, ¶ 6 demands no more.

Indeed, to make its argument, Agis relies on inapposite cases involving the specification's failure to link alternative structure with the claimed function, or to provide a detailed algorithm for performing the function. *See Saffran v. Johnson &*

7

*Johnson*, 712 F.3d 549, 562 (Fed. Cir. 2013) (holding that the patent "does not []
link any additional structures to the release function with sufficient specificity to
satisfy § 112, ¶ 6"); *Noah Sys.*, 675 F.3d at 1317 (specification failed to disclose
algorithm for performing recited function) *Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371, 1383-84 (Fed. Cir. 2009) (same); *Aristocrat Techs. Austl. Pty Ltd. v.
Int'l Game Tech.*, 521 F.3d 1328, 1335 (Fed. Cir. 2008) ( "general-purpose
microprocessor" was not "sufficient structure").  None of those circumstances are
present here, for the '481 Patent precisely links motion sensors with the function of
sensing chewing actions.

Fifth, Agis seeks to avoid application of the claim-differentiation doctrine by
asserting that doing so would somehow violate "the express mandate of section
112(6)."  (AgisBr. 49-50.)  Not so.  Consistent with the patent's disclosure of
motion sensors and sound sensors as alternative structures for performing the
claimed function, dependent claim 2 recites "wherein said at least one sensor is a
sound sensor carried by the animal for sensing chewing sounds of the animal."
(A111:4-6.)  Contrary to Agis's assertion, the dependent claim's specific recitation
of a sound sensor does not frustrate Section 112, ¶ 6; rather, it confirms that the
broader corresponding structure of independent claim 1 includes structures other
than sound sensors.  Addressing the same issue in *Wenger Mfg., Inc. v. Coating
Mach. Sys., Inc.*, this Court explained:

8

> Although the judicially created doctrine of claim differentiation
> cannot override the statutory requirements of § 112, ¶ 6, it does not
> necessarily follow that means-plus-function limitations must be
> interpreted without regard to other claims.  Claim differentiation,
> while often argued to be controlling when it does not apply, *is clearly*
> *applicable when there is a dispute over whether a limitation found in*
> *a dependent claim should be read into an independent claim, and that*
> *limitation is the only meaningful difference between the two claims*.

239 F.3d 1225, 1233 (Fed. Cir. 2001); *id.* at 1234 (rejecting the same argument that

Agis makes here, and explaining that "*Laitram* does not stand for the broader

proposition … that a means-plus-function limitation must be interpreted without

regard to other claims"); *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330

(Fed. Cir. 2004) (holding that means-plus-function term was not limited to a flute

structure "because an interpretation of claim 1 requiring flutes would render claim

2 superfluous, [and] the doctrine of claim differentiation supports an interpretation

that claim 1 does not require the flutes of claim 2").  The same reasoning applies

with equal force here—reading claim 1 as limited to sound sensors would render

claim 2 completely superfluous—and it should yield the same result.

Sixth, unable to sustain its pinched construction based on the intrinsic

evidence, Agis argues that including motion sensors as corresponding structure

"would run the [] claims directly into the prior art."  (AgisBr. 45-47.)  Agis's

contention is unavailing.  The "argument that we should consider the validity of [a]

claim [] in construing the [corresponding structure of the means-plus-function]

limitation misses the mark.  Because the other claim construction tools

9

unambiguously resolve the claim construction dispute, considering validity would be improper." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1304 (Fed. Cir. 2005). To that end, though this Court "acknowledge[s] the maxim that claims should be construed to preserve their validity, we have not applied that principle broadly, and we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (en banc). Disregarding this guidance, Agis tries to steer away from the proper construction by raising the specter of invalidity. In such instances, "[c]ourts should be cautious not to allow claim construction to morph into a mini-trial on validity. Claim terms … cannot be rewritten by the courts to save their validity." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1374 (Fed. Cir. 2014).

Agis also resorts to extrinsic evidence from unrelated U.S. and European patent applications to argue that the claims of the '481 Patent are limited to sound sensors. (AgisBr. at 47-48.) This is legally erroneous. Statements plucked from unrelated prosecution histories are not competent evidence for construing the claims of the '481 Patent. *See Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006) ("[S]tatements made during prosecution of the later, unrelated '995 patent cannot be used to interpret claims of the '893 patent."); *Abbott Labs. v. Dey L.P.*, 287 F.3d 1097, 1104–05 (Fed. Cir. 2002) (rejecting

argument that prosecution history estoppel arises from prosecution of an unrelated, commonly-owned patent). And those prosecution histories cannot alter the clear disclosure of the '481 Patent itself, which identifies motion sensors as corresponding structure. *See Hill-Rom*, 755 F.3d at 1381 ("[S]tatements made during prosecution of a later, unrelated patent cannot form the basis for judicial estoppel."). In any event, nothing in the unrelated prosecution histories disclaims use of motion sensors by the asserted claims. Rather, consistent with the teachings of the '481 Patent, those prosecution histories simply note that sound sensors are a preferred structure for sensing chewing actions. (A1250-51 (unrelated European prosecution history referring to paragraph 35 of the '481 patent application (A1150), which describes sound sensors as preferred); A955 (unrelated U.S. prosecution history; also referencing paragraph 35 of the '481 patent application).)

In sum, under a proper construction that includes motion sensors as corresponding structure for the "sensor for sensing chewing actions" term, there exist, at minimum, disputed issues of fact.

**B.    The District Court Improperly Omitted The Algorithm In Figure 6 As Corresponding Structure For The "Data Processor" Term**

SCR's opening brief demonstrated that the written description and figures of the '481 Patent establish that the algorithm from Figure 6 provides corresponding structure for the term "a data processor accumulating both the time of each of said sensed chewing actions and the number of said chewing actions per unit time

11

interval, for determining the chewing rhythm of the animal indicating ruminating activity." (SCRBr. 33-36.) SCR also showed that Agis's own claim construction charts and Agis's experts' opinions—all of which identified Figure 6 as corresponding structure—confirm this construction. (*Id.* at 36-37.)

Agis's response largely sidesteps the intrinsic evidence, attempts to retract its experts' opinions, and entirely ignores its own representations during litigation. Instead, Agis contends that Figures 8 and 11 provide corresponding structure for the "data processor" term. (AgisBr. 53-54.) That may be true, but it does not exclude the algorithm in Figure 6 as alternative, corresponding structure. "When looking to the specification for the structure of a § 112, ¶ 6 claim, one must construe the claim in accordance with all the structures disclosed by the inventor." *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 909 (Fed. Cir. 2005). Accordingly, as SCR showed (SCRBr. 22, 31), "proper application of § 112 ¶ 6 generally reads the claim element to embrace *distinct and alternative described structures* for performing the claimed function." *Creo Prods., Inc. v. Pressteck, Inc.*, 305 F.3d 1337, 1346 (Fed. Cir. 2002); *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258-59 (Fed. Cir. 1999) (instructing that a "means-plus-function claim encompasses all structure in the specification corresponding to that element"). Agis's response omits any discussion of these binding precedents.

Here, the '481 Patent explains that Figure 6 "illustrat[es] one algorithm which may be used by the data processor [] for determining whether the detected chewing sounds represented by the received electrical signals are ruminating activities or eating activities." (A109:5:14-18.) The specification then teaches that the Figure 6 algorithm "determin[es] the *rhythm (e.g., duration and frequency)* of the chewing sounds at time-spaced intervals." (A109:5:19-20.) The specification further provides that "the *rhythm of the chewing actions are determined, according to the algorithm of FIG. 6*, by counting the number of chewing sounds in a predetermined sample time period at periodically spaced intervals." (A109:5:24-27.) Given the patent's teaching that the algorithm in Figure 6 determines "duration and frequency" of chewing actions, skilled artisans would understand that chew time is obtained by dividing the "time-spaced interval" by the number of chews during that interval. (A109:5:14-51.)

In the district court, Agis and its experts expressly recognized that "the corresponding structure provided in the specification of the '481 patent is a data processor *configured to perform the algorithms of Figures 6* or 8." (A1295-96.) Likewise, despite Agis's attempt to expunge or otherwise avoid the opinions of its experts, both of Agis's experts recognized that Figure 6 discloses an algorithm corresponding to the "data processor" term. (A1773 (opinion of Dr. Sidman); A303 (opinion of Dr. Stevenson).) In fact, while citing to its expert Dr. Sidman's

13

subsequent attempt to recant his opinion that Figure 6 provides corresponding structure, Agis fails to show that its other expert Dr. Stevenson had ever altered his opinion. In any event, Agis's own submissions as part of its summary-judgment briefing expressly identified Figure 6 as corresponding structure. (A1296.)

Accordingly, the district court erroneously excluded the algorithm of Figure 6 as corresponding structure for the "data processor" term.

### C. The District Court Misapplied The Claim Language, Improperly Resolved Factual Disputes, And Incorrectly Drew Inferences In Favor Of Agis

SCR's opening brief demonstrated that the district court improperly imported unrecited numerical limitations into the claims, and redrafted the claim language, in order to justify its non-infringement conclusion. (A16-17; SCRBr. 38-40.) The district court determined that the accused CowManager product "cannot detect a chewing frequency higher than .5 chews per second" whereas a ruminating cow's chewing rate "is .67 to 2 chews per second according to the '481 patent." (A16.) This analysis is legally flawed because the claims do not recite any numerical ranges nor specify a particular sampling rate. (SCRBr. 38-39.) "[W]hen a claim term is expressed in general descriptive words, we will not ordinarily limit the term to a numerical range that may appear in the written description or in other claims." *Conoco, Inc. v. Energy & Envtl. Int'l*, 460 F.3d 1349, 1358 (Fed. Cir. 2006). Ignoring this basic rule, Agis cites various

embodiments in the specification and relies on attorney say-so to assert that according to "realities of bovine behavior, a system … would need to sense chews lasting between 0.5-1.5 seconds." (AgisBr. 58-59.) Agis's statement about the (supposed) "realities of bovine behavior" lacks evidentiary support and is contrary to long-standing precedent that infringement "is determined by comparing an accused product *not with a preferred embodiment described in the specification … but with the properly and previously construed claims.*" *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985).

The district court further erred by rewriting the claim language to require "measur[ing] the time" of the chews. (A16-17.) As SCR explained, the claim language does not recite "measuring" the time of chewing actions. (SCRBr. 39-40.) Rather, the claims recite "sensing" and "accumulating" the time of chewing actions. (A110:8:58-65.) Ignoring the actual claim language, Agis perpetuates the district court's error by citing fragments of the specification where the inventor used the word "measure," and then seeking to equate "sensing" and "measuring." (AgisBr. 59-60.) However, Agis's citations to the specification refute its argument. The inventor's use of the different words "sense" and "measure" in the specification, when juxtaposed with the inventor's affirmative choice to recite "sensing" in the claims, confirms that the claims are not limited to measuring. The claim language therefore should not be rewritten to require measuring. "Had the patentee similarly

15

intended to require that the [term 'measuring'], it could have included such a limitation in the claim but notably did not." *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012).

SCR also demonstrated that the district court improperly accepted Agis's expert opinions over SCR's expert opinions—having credited Agis with "mak[ing] a good case" (A16)—and incorrectly drew inferences in Agis's favor.  (SCRBr. 40-48.)  Agis's response highlights the district court's errors.  Agis mischaracterizes SCR's experts' opinions; even so, Agis's arguments simply go to the weight that a factfinder should accord to SCR's expert opinions.  (AgisBr. 61-62.)  Of course, "[d]etermining the weight and credibility of the evidence is the special province of the trier of fact." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 856 (1982).

Despite Agis's unsupported suggestion to the contrary, viewed under the proper summary-judgment standard, the record clearly shows disputed issues of fact regarding whether the accused product senses chewing time and senses the number of chews per unit time interval by determining the "rhythm (e.g., duration and frequency)" (A109:5:18-20) of chewing actions in accordance with the algorithm of Figure 6:

- SCR expert report detailing testing simulation of chewing rates and explaining results showing that "chewing rate is detected within a band of

**CONFIDENTIAL MATERIAL REDACTED**

chewing rates and is known in chews per second for a given minute"
(A1403-07);

- SCR expert report analyzing source code and explaining that accused

  product ensures that the "frequency" of the cow's accelerations (including

  accelerations from each chewing action) "more closely match █

  ████████████████████████ (A1492);

- SCR expert declaration explaining that accused product "detects chewing

  action based on ████████████████████████████

  ████████████████████████████████

  ████ …. Thus, the rhythm of the chewing is detected as a range of

  frequencies centered on 1 chew per second" (A2086-87 ¶ 10);

- SCR expert declaration explaining that accused product ████████

  ████████████████████████████

  ████████████████████████████

  ████████████████████████████

  ████████████████" (A2086-87 ¶ 12); and

- SCR supplemental expert report, timely served under the scheduling order,

  explaining that "[f]or any given time period or interval" the accused

  product "will yield the number of chews during that time period and that

  chewing rhythm.  The results from the rumination and chewing simulation

as shown in Table 1 show experimental data similar to the results of the tests" (A4592 ¶ 2(b)).

Faced with this record evidence, Agis instead claims that SCR's expert admitted in deposition that "the CowManager system does not determine the time of each chew." (AgisBr. 62.) But this purported admission is nothing of the sort—it concerned whether the accused product "measures" chew time "like a stopwatch." (A3906:133:2–134:6.) As explained above, the claims recite "sensing," not measuring, chew time. (*Supra* pp. 15-16.)

Agis also tries to recast the district court's improper drawing of inferences as "simply read[ing] the cited testimony and conclud[ing] that it provided no support for SCR's infringement position." (AgisBr. 62-63.) Not so. As SCR demonstrated, the district court considered inconsistent testimony from Mr. Paul Rump, Agis's former chief technology officer, and drew inferences in Agis's favor by crediting only the testimony that favored Agis's position. (SCRBr. 46-48.) In particular, the district court accepted Mr. Rump's testimony that Agis's system "never [is] capable of detecting a frequency." (A3007:131:13-14.) This testimony directly contradicts Mr. Rump's prior, repeated testimony that the accused product detects chewing frequency:

> Q:    [I]f th[e] cow is ruminating and chewing at the rate of one chew
>       per second, will the Agis system be able to detect such chewing?

A:      *The majority of the Agis systems will just be able to detect it*, but there are a few which will not be capable of detecting the precise 1 hertz frequency.

(A3007:129:21-130:3.)  Mr. Rump further testified that the Agis system senses and

detects chewing frequency:

Q:      Is [the Agis system] capable of sensing chewing of approximately 1.1 chew per second?

A:      So when the cow is chewing with 1.2 chews per second, then the Agis sensor is capable of sensing the presence of a frequency.

Q:      And the Agis SensOor is capable of detecting the presence of a frequency if the cow is chewing at .8 chews per second?

A:      Yes.

Q:      What about .9 chews per second?

A:      I have no clue where the cutoff rate is, but I think at .9, it's still kind of logical that it will be measured or sensed.

(A3008:133:25-134:12.)  The credibility of Mr. Rump and the weight to be

accorded to his testimony are issues for the jury to resolve, not for the court to

determine at the summary-judgment stage.  Accordingly, this Court should remand

for a proper determination by a trier of fact.

## II.    THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT OF NON-INFRINGEMENT REGARDING THE '149 PATENT STEMS FROM AN ERRONEOUS CLAIM CONSTRUCTION

The district court predicated summary judgment of non-infringement

regarding the '149 Patent based on an erroneous construction of the term

"attenuating the energy level of the acceleration signal as the indication of eating is

19

stronger." The court held that "the attenuating step … requires that the energy level of the signal from the acceleration sensor be reduced in proportion to the strength of the indication that the animal is eating." (A25.) SCR's opening brief demonstrated that the district court erred by (i) requiring attenuation of the acceleration signal *during transmission* and (ii) that such attenuation be "*in proportion*" to an animal's eating. (SCRBr. 50-59.) Importing these limitations into the claims is contrary to the intrinsic evidence and, under a proper construction, there exist genuine issues of fact. (*Id*.)

## A. Agis's Arguments Cannot Rehabilitate The District Court's Erroneous Construction

As with the '481 Patent, Agis's response largely ignores the evidence, law, and reasoning set forth in SCR's brief. Instead, Agis proffers several arguments that are contradicted by its own positions in the district court, the intrinsic evidence, and this Court's precedent.

First, seeking to deflect attention from the district court's erroneous construction, Agis argues that "SCR never proposed any construction of the 'attenuating step'" at the district court. (AgisBr. 34, 65-67.) That assertion is incorrect. SCR proposed a construction—"identifying when the sensed motion is statistically not related to eating periods of said cattle animal" (A1304)—that was filed with the district court and submitted as part of the summary-judgment briefing. Furthermore, Agis's own proposed findings of fact demonstrate that Agis

was fully aware of SCR's proposed construction.  (A3561-62 ¶ 131.)  This Court

rejects waiver arguments when, as here, the "party claiming waiver had fair notice

and an opportunity to address the issue concerning the scope of a claim limitation."

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1371 (Fed. Cir. 2002).  Nor

did SCR forego any challenge to the district court's construction, because waiver is

inapplicable when a party asks this Court to reject "the imposition of [] additional

limitation[s] not required or recited by" a party's construction below.  *Interactive*

*Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1348 (Fed. Cir. 2001).

Further, while SCR's articulation of its construction in the opening brief

(SCRBr. 56) used slightly different wording than the construction offered in

district court, it was, in sum and substance, of the same scope and entirely

consistent with SCR's position at the district court.  Waiver is not present when "a

party simply presented new or additional arguments in support of the scope of its

claim construction, on appeal." *CCS Fitness*, 288 F.3d at 1371; *Summit 6, LLC v.*

*Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("[Defendant's]

argument on this issue has been sufficiently consistent to negate a finding of

waiver."); *Blackboard*, 574 F.3d at 1377 (rejecting waiver argument even when

party "did not consistently and clearly present its" argument, given that party made

its argument "with sufficient timeliness and clarity that it should not be charged"

with waiver).

Second, Agis fares no better in defending the district court's construction. Agis contends that neither it nor the district court "construe[d] the attenuating step to require attenuation during transmission of an acceleration signal." (AgisBr. 68.) Viewing the court's construction in context belies this argument. Agis's summary-judgment motion urged that "attenuating" must "necessarily indicate a decrease in signal magnitude or amplitude *during transmission of a signal*." (A1548; *see also* A1547-48 ("An acceleration signal produced by an acceleration sensor is the transmission of information….").) The district court then "construe[d] the attenuating step as proposed by defendant" (A25) and credited Agis's dictionary definition of "'attenuation' to mean 'decrease in magnitude of current, voltage, or power of a signal in *transmission between points*'" (A20).

SCR's opening brief demonstrated that such a construction is contrary to the claim language and specification. (SCRBr. 50-52.) As Agis itself notes, "[i]ndependent claim 12 is representative for purposes of the issues raised in this appeal." (AgisBr. 8.) "Proper claim construction demands interpretation of the entire claim in context, not a single element in isolation." *Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005). Importantly, claim 12 recites "at least one *microprocessor for … attenuating* the energy level of the acceleration signal as the indication of eating is stronger." (A120:-9:7-9.) This language makes clear two essential things: (1) that attenuation is performed by and in the

microprocessor ("microprocessor for attenuating"); and (2) that the attenuation cannot occur during transmission of the signal to the microprocessor, because if the signal is to be attenuated by the microprocessor, the microprocessor must actually receive the signal—the signal cannot be in the process of transmission for attenuation of that signal to occur in the microprocessor.  This understanding also draws support from the claim's recitation that it is the "energy level *of the acceleration signal*"—not the signal itself—that is attenuated.  (*Id.*)  The district court, however, distorted this language by requiring attenuation of the signal "*from the acceleration sensor*."  (A25.)

The specification also illustrates the district court's error.  For example, the '149 Patent explains that the microprocessor can "receiv[e] input[s] … from a sensor device" and "filter[]" the inputs by "using an appropriate software or combination of software and hardware."  (A118:5:67-6:13.)  The patent further explains that the "energy level" of the acceleration signal "can be *deduced*" through an arithmetic "RMS" (root mean square) value.  (A117:3:45-47.)  This "deduc[tion]" occurs in the microprocessor, not during transmission of the signal from the acceleration sensor to the microprocessor.  Agis's brief ignores that the attenuating step must occur in the microprocessor.

Third, attempting to justify the district court's importation of the "in proportion" limitation into the claims, Agis offers a scattershot of citations and

23

snippets from the specification and prosecution history.  (AgisBr. 70-72.)  With

one exception, none of Agis's citations has anything to do with "proportionality."

The lone cited passage that *does* mention proportionality only serves to confirm the

error of Agis's argument.  At column 4, lines 21-27, the '149 Patent describes an

embodiment that "*may attenuate* radiation *proportional* to the amount of liquid" in

a sensor:

> *Another combined sensor may* be a cell partially filled with liquid and
> comprising a transmitter and a receiver for electromagnetic radiation,
> placed in two opposite sides of the cell.  The transmitter *may radiate
> electromagnetic radiation*.  The *liquid may attenuate the radiation
> proportional* to the amount of liquid momentarily existing between
> the transmitter and the receiver.

(A117:4:21-27.)  As this Court recognizes, "the use of 'may' signifies that the

inventors did not intend to *lim[it]* the patent."  *Prolitec, Inc. v. Scentair Techs., Inc.*,

807 F.3d 1353, 1358 (Fed. Cir. 2015).  Accordingly, such permissive language—

particularly in the context of an *alternate* embodiment—cannot justify limiting the

claims to mandate "proportion[al]" attenuation in all cases.  *See, e.g., i4i Ltd.

P'ship v. Microsoft Corp.*, 598 F.3d 831, 844 (Fed. Cir. 2010) (declining to read in

feature from specification that was described using "permissive language"); *Prima-

Tek II, L.L.C. v. Polypap, S.A.R.L.,* 318 F.3d 1143, 1150-51 (Fed. Cir. 2003)

(rejecting narrow construction of the term "floral holding material" given

specification's teaching that "floral holding material [] *may be any shape* desired in

any particular application").

Like the district court, Agis also fails to properly analyze the claim language. The asserted claims simply recite "attenuating … as the indication of eating is stronger." (A119:8:20-21; A120:9:9-10.) Nothing in the asserted claims demands that attenuation be proportional, inversely proportional, or bear any other relation, mathematical or otherwise, to the indication that eating is stronger. The claims require only that the microprocessor be "for attenuating the energy level of the acceleration signal *as* the indication of eating is stronger." As SCR's opening brief explained, in these circumstances, "[g]eneral descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone." *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). The word "as" cannot bear the meaning of "proportionality." Agis offers no response to SCR's analysis or to the applicable law.

Moreover, "both asserted and unasserted" claims can be "valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314. Here, as SCR's opening brief explained, unasserted dependent claim 25 demonstrates that the "in proportion" limitation should not be imported into the asserted claims. (SCRBr. 53-54.) Claim 25 adds the limitation "wherein said combined sensor reports head motion values inversely *proportional* to the head's inclination angle." (A120:10:12-14.) Clearly, the inventors knew how to recite "proportional" or incorporate proportionality concepts into the claim language.

Had the inventors intended to do so in the asserted claims, they could and would have done so explicitly. *See, e.g., i4i*, 598 F.3d at 843 ("Had the inventors intended this [] limitation, they could have drafted the claims to expressly include it."); *Cordis Corp. v. Medtronic Ave, Inc.,* 511 F.3d 1157, 1174 (Fed. Cir. 2008) ("If the patentee had intended claim 23 to only cover grafts with tubular members having complete slots, the patentee presumably would have drafted the claim to specify 'complete slots,' the term used in the written description to describe such fully bounded slots."). Again, Agis fails to addresses the showing of SCR's opening brief.

### B.  Under A Proper Construction, Genuine Issues Of Material Fact Exist Regarding Infringement Of The '149 Patent

The district court expressly predicated its grant of summary judgment upon its claim construction. (A27-28 (stating that SCR did not "raise[] a genuine issue of fact as to whether the CowManager system performs the *attenuating step as the court has construed that limitation*," and holding that SCR did not show that attenuation "is proportionate to the strength of the indication of eating").) SCR's opening brief established that the claims cannot be read to incorporate this "proportional" requirement, and so, under a proper construction, there exist genuine issues of material fact regarding infringement. (SCRBr. 56-59.)

Agis contends that even under a proper construction, "[t]here is no genuine dispute of fact." (AgisBr. 74.) Agis's arguments, however, again go to the weight

of the evidence, and they are contrary to even the district court's analysis. There is no dispute that the accused system receives acceleration signals "as inputs for █████████████████████████████████," and such calculations provide the statistical variance and average rates of change in a group of sampled acceleration signals. (A3573-74 ¶¶ 162-63.) The district court noted that the accused system includes an ear tag "containing an accelerometer and a microprocessor which performs a statistical calculation on the accelerometer data." (A11-12.) Describing the statistical analysis performed by the accused system, the court explained that the ██████ value ██████████████████████████████ ████████████████████████████████████████████ (A12-13.) The court also noted that the accused system then removes and does not consider certain ██████████████████████████████████ (*Id.* at 13.) The court also noted that the accused system calculates the ████████ value, which is █████████████████████████████████ ██████████████████████." (*Id.*)

The district court's findings are consistent with SCR's expert's analysis. For example, Dr. Aneshansely explained that the accused system attenuates acceleration data through statistical analysis. (A1407-10.) In particular, as explained in SCR's opening brief, Dr. Aneshansely detailed that:

████████████████████████████████████████
████████████████████████████████████████

*Since Eating has a wider range of acceleration whereas High Active has a tighter range of acceleration, most of the eliminated accelerations would be from the Eating activity rather than High Active.* Under this scenario, Eating could occur for more than 30 seconds of the minute, but the decision for that minute would still be High Active. *This would be an attenuation of the signal energy level for Eating resulting in a reduction in the time of Eating* in the final presentation to the farmer.

(A1411.) Dr. Aneshansley further explained that the statistical analysis in Agis's accused product includes ████████████████████████████████

████████████████████████████████████████████████and also causes a loss of eating energy associated with frequency," and the ████████

████████████████████████████████████████████is an attenuation of the higher acceleration values in the Eating energy."  (A1415-16.)

In a similar vein, Agis's assertion that the accused system always performs the "same" calculations and therefore does not attenuate is contrary to the record evidence.  Mr. Hansbury, SCR's expert addressing the source code, explained that when the Agis system calculates the ████████████ ratio, it ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████ which results in a further attenuation of the value of the

acceleration signal produced as eating becomes more frequent or stronger.

(A1491.)  Moreover, the expert testimony demonstrates that Agis's algorithms

have the effect of attenuating increased eating activity.  (A1411 ("Eating could

occur for more than 30 seconds of the minute, but the decision for that minute

would still be High Active.  This would be an attenuation of the signal energy level

for Eating resulting in a reduction in the time of Eating…."); A1415-16.)  Indeed,

while Agis attempts to explain away the similarity in algorithms between its

accused product and the asserted claims as a result of "comparing" performance

with its competitors' products (AgisBr. 20), Agis's own pre-suit, internal

communications admitted that Agis was "mirror[ing] our algorithm on the

performance of [SCR's] Heatime."  (A4816.)

On this record, there exist, at minimum, genuine issues of fact as to whether

the accused system statistically reduces the value of the acceleration signal when

the indication of the animal's eating increases.

Finally, the district court's judgment on willful infringement should be

remanded for proceedings consistent with the Supreme Court's further decisions in

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371 (Fed. Cir. 2014), *cert.*

*granted*, 136 S. Ct. 356 (2015) and *Stryker Corp. v. Zimmer, Inc.*, 782 F.3d 649

(Fed. Cir. 2014), *cert. granted*, 136 S. Ct. 356 (2015).

## CONCLUSION

For these reasons, the district court's judgment should be vacated and the case remanded for further proceedings.

Dated:  April 11, 2016                    Respectfully submitted,


                                          /s/ Gregory A. Castanias
                                          GREGORY A. CASTANIAS
                                          JONES DAY
                                          51 Louisiana Avenue, N.W.
                                          Washington, DC 20001
                                          (202) 879-3939

                                          ISRAEL SASHA MAYERGOYZ
                                          JONES DAY
                                          77 West Wacker Drive
                                          Chicago, IL 60601-1692
                                          (312) 269-1572

                                          FRED H. PERKINS
                                          ALVIN C. LIN
                                          MORRISON COHEN LLP
                                          909 3rd Avenue
                                          New York,  NY 10022
                                          (212) 735-8600

                                          BARRY G. MAGIDOFF
                                          PAUL J. SUTTON
                                          SUTTON MAGIDOFF LLP
                                          909 3rd Avenue, 27th Floor
                                          New York, NY 10022
                                          (212) 584-1990

                                          *Attorneys for Appellants*
                                          *VocalTag Ltd. and SCR*
                                          *Engineers Ltd.*

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 6,808 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Dated:  April 11, 2016

/s/ Gregory A. Castanias
Gregory A. Castanias
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2016, I caused the foregoing Non-Confidential Reply Brief for Appellants VocalTag Ltd. and SCR Engineers Ltd. to be filed via CM/ECF with the Clerk of the Court, thereby electronically serving it on all counsel of record in this matter.

Dated: April 11, 2016

/s/ Gregory A. Castanias
Gregory A. Castanias
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939